## Philadelphia & Reading Railway Company v. County of Philadelphia, Appellant.

*Railroads—Rates—Passenger traffic—Act of April 5, 1907, P. L. 59—Constitutional law—Corporations—Alteration of charter.*

Where a railroad company is prosecuting its passenger traffic at a loss, and it is within the power of the company to reduce this loss by charging rates to passengers in excess of the requirements of the Act of April 5, 1907, P. L. 59, but within the limit which the law would otherwise permit, and in this manner the company can more nearly approach a reasonable and proper return upon its capital, the company will be relieved from the duty of compliance with the act of 1907, under the protection afforded by the constitutional provision to the effect that the legislature can alter or annul an existing charter only in such manner that no injustice shall be done to the incorporators.

Argued March 29, 1910. · Appeal, No. 390, Jan. T., 1909, by defendant, from decree of C. P. No. 4, Phila. Co., June T., 1907, No. 935, granting injunction in case of Philadelphia & Reading Railway Company v. County of Philadelphia. Before FELL, C. J., POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity, praying that the Act of April 5, 1907, P. L. 59, be declared unconstitutional and void, and that the defendant be enjoined from bringing any suit or suits for penalties.

WILLSON, P. J., filed the following opinion:

The Act of assembly of April 5, 1907, P. L. 59, commonly known as the two-cent fare law, was an attempt by the lawmaking power of the commonwealth to impose upon all the railroad corporations of the state, irrespective of the character or location of their roadbeds and of the expense of operation thereon, a flat rate of two cents per mile for the transportation of each passenger. With the question of the wisdom or unreasonableness of such a general and indiscriminate provision we are not concerned. It cannot now be regarded as a question open to debate whether it is within the power of the legislature to regulate the rates of fare or freight to be charged by railroad corporations by a general statute, leaving the question of the application of the statute to particular cases to be determined according to the particular circumstances of each. It would be easy to cite many cases which have arisen and been decided in different parts of the country wherein the rights of the states to enact such laws has been recognized and affirmed. We need not, however, go further than the decision of our own Supreme Court in the case of the Pennsylvania Railroad Company v. Philadelphia County, 220 Pa. 100, to find an exposition of the doctrine. This case furnishes to us all the standards needed for the disposition of one of the main questions which have been raised in the present controversy. We must assume in the consideration of the matter in hand that the act of 1907 will apply to the plaintiff company and determine the rates of fare which can lawfully be imposed upon its passengers, unless some controlling reason can be found in constitutional rights which the company can assert and rely upon to exempt it from the statutory requirements. The burden of exhibiting and establishing the basis for such exemption undoubtedly rests upon the plaintiff.

So much may be regarded as conceded, and it would be a waste of time to elaborate either a statement or a discussion of the question.

It does not seem to us to be at all necessary to state at length the details of the history of the plaintiff corporation, or to show how it became possessed of the various sections or parts which now constitute its entire system.

*A.* After a careful study of the whole case as it has been presented to us, we have reached the conclusion that, to apply the principles settled by the Pennsylvania Railroad case to the present, it is not requisite to analyze the entire system of the plaintiff's railroad, and separate it into its original units for the purpose of ascertaining what rights the constituent companies possessed as to the fixing of rates of fare for passengers. In the case of one or two of these original corporations whose road-beds are now parts of the entire system, the acts of incorporation limited the maximum charge for passengers to two cents per mile, but these instances were of roads of insignificant length, and not of sufficient relation to the whole system to make it worth while to give to them a separate consideration, or any determining weight in the case. As to these it may be conceded that the inhibition as to charges above two cents per mile is still in force, and yet the larger question as to what the plaintiff company may lawfully charge upon these lines generally will still be open.

*B.* The Philadelphia & Reading Railroad Company was incorporated by Act of assembly of April 4, 1833, P. L. 144. Whatever powers it then acquired to impose tolls or charges for transportation of passengers, so far as these powers may be said to have constituted a part of the contract which the state entered into with the corporation, were expressed and are to be found within the limits of that statute.

It does not seem to us that it can properly be contended that there was in the statute any express grant of a power or right to the corporation to charge any fixed or maximum rate for passenger transportation. In this respect the case before us differs from that of the

Pennsylvania Railroad Company. It is true that, in the twentieth section of the act, it was provided that the president and managers might from time to time "ordain and establish rules and regulations for the due ordering of all traveling and transportation on the said road, and for its preservation, with power to alter, repeal, enlarge or amend the said rules and regulations as they may deem expedient. . . . Provided, that the toll of any species of property shall not exceed an average of four cents per ton per mile, nor upon each passenger an average of two cents per mile."

The limitations of the proviso doubtless related to a condition of affairs which existed in the early history of railroad development, namely, the carriage of merchandise and passengers in vehicles furnished by third persons to be transported by the railroad company.

The case of Boyle v. Philadelphia & Reading R. R. Co., 54 Pa. 310, treats of this condition of affairs, and exhibits a striking difference between what was contemplated when railroads were first introduced into the country and what now exists.

*C.* By subsequent leases and mergers the Philadelphia & Reading Railroad Company absorbed into its system a very large number of railroads, belonging to various companies which had been separately incorporated. Some of these railroads were extremely diminutive in length. All of these properties so acquired, together with the railroad of the main line as authorized by the act. of 1833, and together also with all franchises, etc., which the Philadelphia & Reading Railroad Company possessed were, in 1888, covered by a mortgage made and executed by that company to a trustee for the protection of bondholders. In the year 1896, under foreclosure proceedings all the property and rights covered by the mortgage was sold, and the plaintiff company was formed for the purpose of taking, holding, using and operating all the properties and the rights that had been embraced in the said mortgage. All of said properties

and rights were conveyed or transferred to the plaintiff company. At the same time another corporation, called The Reading Company, was organized for the purpose of carrying out, in some of its details, the reorganization of the company. The capital of the plaintiff company was made for the purposes of the reorganization, $20,000,000, but this was merely nominal in character, and it was all issued to, and is still held by, the said Reading Company. But one certificate was issued for the entire amount of the capital stock. In the same year, namely, 1896, the plaintiff company, by resolution of its board of directors, accepted all the provisions of the present constitution of the state, and especially the provisions of art. XVI of the same.

This epitome is sufficient to enable us to approach the vital question in this part of the case.

Following the course adopted by us in treating the case of Pennsylvania Railroad Company when it was before us—a course which was approved by the Supreme Court, on appeal—we shall only consider the effect of the act of 1907, so far as it relates to the passenger business of the plaintiff corporation, leaving out of view altogether the condition or the net results of the total traffic, freight and passenger, of that company.

With reference to the passenger business of the company, we find:

1. That this portion of the business of the company is small both in extent and in pecuniary results, as compared with the other business of the company.

2. That the carriage of passengers by the plaintiff involves a net loss each year, whether the calculation of results is made by the revenue train mileage system, which is that primarily adopted by the plaintiff in the presentation of its case, or by any other standard that has been exhibited to us. It is true that if, as against the actual receipts from that class of business, only what may properly be called operating expenses are charged, there would appear to be a profit; but to arrive at a true

and just result, it is clearly necessary to include also other charges or deductions. As to these there is a mass of testimony and calculations, which we have carefully studied, but in our opinion it would be of no advantage to the case to set them forth or to discuss them in detail. We agree with the plaintiff company that it is a proper method of reaching results—which in any possible way of attempting to reach them must necessarily be only approximate—to set off against the total receipts not only the strictly operating expenses connected with passenger traffic, but also a certain proportion of common expenses, expenses common to passenger and freight business, and others which relate solely, or so nearly so as not to be divisible, to the passenger traffic.

In our opinion, among such deductions not embraced in operating expenses there may and should properly be included fixed charges, interest on cost of passenger equipment, interest on the terminal bonds, and improvements; interest on the cost of shops at Reading, interest on ten per cent of the cost of the subway; interest on the improvements to and at Neshaminy Falls, and interest on cost of elevation of tracks on Ninth street in this city.

Such deductions are made by the plaintiff in some instances by a division according to revenue train mileage, or by some other reasonable standard, and in others by a deduction of the total interest charges, as for example in the cases of the Neshaminy Falls improvement and the work on Ninth street. Whether the alleged resulting loss of over $3,000,000 thus arrived at by the plaintiff, or one much smaller, according to the contention of the defendant's expert accountant, is correct, is not a matter of great moment. In either event, we are satisfied from the proofs that the net outcome of the plaintiff's passenger business involves a large loss to the company from year to year.

3. At the same time, it is true that owing to changes which the plaintiff company instituted, principally in suburban rates, in the neighborhood of this city, after

the act of 1907 went into effect, the actual net loss in the year 1907–1908 was less than it was in the year 1906–1907.

4. It is also true that the plaintiff company has included in its receipts, upon the basis of which calculations have been made on its behalf, the amounts received in part from interstate business, namely, from business passing over about twenty-seven miles of roadbed extending from the Delaware river to Bound Brook in the state of New Jersey, and about twelve miles of roadbed in the state of Delaware.

5. There are various other matters upon which the parties on one side or the other rely, but we will reserve what we have to say in regard to them until we shall answer the requests which have been presented to us for findings.

We are asked to make a decree declaring the act of 1907 to be unconstitutional and void, and enjoining the defendant from attempting to enforce its provisions. It seems to us that we have stated so much of the case as is necessary to determine the bearing of the principle which was settled by the decision of the Pennsylvania Railroad Company v. Philadelphia County, 220 Pa. 100, upon the present case.

We are certainly justified in following the example of the Supreme Court in limiting our consideration of this branch of the case to the question "whether the act of 1907 transgresses the provisions of art. XVI, sec. 10 of the constitution, that the legislative power to alter or annul shall be exercised only in such manner that no injustice shall be done to the corporators."

Following this same example, we must assume that injustice would be done to the corporators of the plaintiff company, in case the requirements of the act of 1907, if obeyed by the company, would result in depriving the corporation plaintiff of a return from the prosecution of its passenger business of a rate of profit not less than a legal rate of interest. That test was plainly recognized

and approved in the same case, as well as in Brymer v. Butler Water Co., 179 Pa. 231.

There is no occasion for us to rehearse the grounds upon which the Supreme Court reached the conclusions referred to.

Having been reached and expressed as the judgment of that court, it is our duty to follow them. The question therefore which we have to determine, in order to ascertain the bearing of what has been settled by that court upon this branch of the case is one of fact, viz.: whether or not the requirements of the act of 1907, if obeyed by the plaintiff company in fixing its rates of fare for passengers would work injustice to the corporators by depriving them of a just return upon their share in the company's property and business.

We are of the opinion that this question must be settled in favor of the plaintiff company, and we think that the state of facts which we have already set forth sufficiently justifies such a conclusion. The company clearly had the right, previous to the passage of the act of 1907, either under the provisions of its original charter of 1833 or under the general railroad act of 1849, to charge a rate of at least two and a half cents for each passenger per mile. This charge it did make on a large portion of its passenger traffic. It is true that, for the purpose of stimulating business and increasing results by a multiplication of passengers over short routes, adjacent to this city, it established commutation and other rates which were largely below the maximum rate just referred to. This course must be regarded as experimental and as intended to give information to the company in regard to the best manner of conducting its business and of imposing reasonable, profitable rates for passenger travel. It was not obliged to lower any of its rates below two and a half cents a mile, and it was at liberty at any time to impose the highest lawful rate upon its passengers on either the whole or any portion of its lines.

The right to charge a higher rate than two cents a mile

was valuable, and if it is made to appear that the lower rate mentioned would prevent a return of at least six per cent upon the amount invested on the side of passenger traffic, to take away that right would work an injustice to the corporators.

It is true that, so far as actual results are concerned, by means of the shifting of rates and attempts to avoid loss, the company does not appear actually to have suffered any diminution in net receipts.

This, however, has been effected at very considerable loss to those who have been accustomed to travel at lower rates than those which have been imposed since the act of 1907 was enacted, and it is by no means certain that the policy thus adopted will prove in the long run to be remunerative.

It is also true that the actual amount of loss, which, upon the basis of the present passenger business of the company, has resulted from obedience to the requirements of the act in question, has not been more than about $200,000 for the year taken as a test. This we do not regard as decisive. In any event, it seems to be beyond question that the amount of loss has been and will be substantial, and, in the development and growth of the plaintiff's business, it is reasonably certain that in the future the loss will be very great. We consider that the case is to be looked at, not merely with reference to present conditions or results, but with reference to the probabilities of the future and the actual rights of the company to derive a profit from the transaction of its business. It certainly cannot be successfully claimed, simple because by shifts and adjustments in a particular year the company may be able to avert any serious disaster or loss, that the company will not be able to make a reasonable and proper profit in other years, in case it was permitted to adopt and enforce rates above the maximum fixed by the act of 1907. The future probable, reasonably certain, effect of the law should not be left out of consideration.

At this point it is proper also to say that we do not consider that the case before us is to be seriously affected by the circumstance that as to a portion of the passenger traffic taken into consideration there is an inclusion of the results of the interstate business. We grant that the results of such business have no proper place in the controversy. At the same time we agree with the view urged on the part of the plaintiff, viz.: that the inclusion of results of the interstate business, taking both receipts and expenses into consideration, can make no difference in the substantial condition of affairs, so far as those affairs are involved in the present controversy. The extent of the loss suffered by the plaintiff company in the prosecution of its passenger traffic is too great to be affected materially one way or the other by the outcome of the interstate business.

We, therefore, conclude, in view of the fact that the company is prosecuting its passenger traffic at a loss, and that it is within the power of the company to reduce this loss by charging rates to passengers in excess of the requirements of that statute, but within the limit which the law would otherwise permit, and that in this manner the company could more nearly approach a reasonable and proper return upon its capital, that it would work an injustice to the corporators of the plaintiff company if that company were required to obey the provisions of the act of 1907.

It follows from the protection which is afforded by the constitutional provision to the effect that the legislature can alter or annul an existing charter only in such a manner that no injustice shall be done to the incorporators, that the plaintiff company is relieved from the duty of compliance with the requirements of the statute in question. Upon this ground alone we hold that the plaintiff is entitled to the decree and injunction prayed for.

*Error assigned* was decree of the court.

*C. J. Hepburn* and *M. Hampton Todd,* attorney general, with them *Andrew Wright Crawford, Ernest Lowengrund,* assistant city solicitors, and *J. Howard Gendell,* city solicitor, for appellant.

*Abraham M. Beitler* and *W. U. Hensel,* with them *Samuel Dickson, J. D. Campbell,* and *Charles Heebner,* for appellee.

PER CURIAM, July 1, 1910:

All questions of law that were necessarily involved in the decision of this case in the common pleas were considered and settled in Penna. Railroad Co. v. Philadelphia County, 220 Pa. 100. The question of fact at the hearing, on which the case turned, was whether the enforcement of the Act of April 5, 1907, P. L. 59, against the plaintiff would do an injustice to its stockholders by depriving them of a just return upon their shares of stock. The learned judges who heard the case found after a most thorough investigation that the plaintiff's passenger business yielded no net profit but resulted in a heavy loss each year. Their conclusion on the whole case is thus summarized in the opinion of the learned president judge of the court: "We, therefore, conclude, in view of the fact that the company is prosecuting its passenger traffic at a loss, and that it is within the power of the company to reduce this loss by charging rates to passengers in excess of the requirements of that statute, but within the limit which the law would otherwise permit, and that in this manner the company could more nearly approach a reasonable and proper return upon its capital, that it would work an injustice to the corporators of the plaintiff company if that company were required to obey the provisions of the act of 1907.

" It follows from the protection which is afforded by the constitutional provision to the effect that the legislature can alter or annul an existing charter only in such manner that no injustice shall be done to the incorporators,

that the plaintiff company is relieved from the duty of compliance with the requirements of the statute in question. Upon this ground alone we hold that the plaintiff is entitled to the decree and injunction prayed for."

In the opinion of a majority of this court the finding of fact was fully warranted by the testimony, and the conclusion announced necessarily followed. The additional ground for relief set out in the amendment to the bill, that the penalties imposed by the act for any disregard of its provisions, are so out of proportion to the fault as to be evidence that they were not in good faith intended to secure observance of the law but to force acceptance of its terms by deterring a resort to the courts and that the act is therefore unconstitutional, need not now be considered.

The decree enjoining the defendant is affirmed at its cost.